AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 398** |
| UNITED STATES OF AMERICA | <u>**SEALED COMPLAINT**</u> |
| v. | Violations of 18 U.S.C. §§ 666 and 1951 |
| CARMEN RIVERA,  | COUNTY OF OFFENSE:<br>NEW YORK |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

SEAN D. HUGHES, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security – Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
### (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

1. From at least in or about August 2018 through at least in or about June 2022, in the Southern District of New York and elsewhere, CARMEN RIVERA, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar years 2018 through 2022, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, RIVERA solicited and accepted multiple bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth at least $5,000.

(Title 18, United States Code, Section 666(a)(1)(B).)

### COUNT TWO
### (Extortion Under Color of Official Right)

2. From at least in or about August 2018 through at least in or about June 2022, in the Southern District of New York and elsewhere, CARMEN RIVERA, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, RIVERA, under color of official right, obtained money from NYCHA contractors, with their consent, that was not due RIVERA or her office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

3. I am a Special Agent with HSI currently assigned to the Document and Benefit Fraud Task Force, and I have been personally involved in the investigation of this matter. I have been employed by HSI since June 2018. I and other members of the investigative team, which includes agents from HSI, the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for NYCHA ("NYCHA-OIG"), the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), the United States Department of Labor – Office of Inspector General ("DOL-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

4. This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

5. As set forth in more detail below, there is probable cause to believe that CARMEN RIVERA, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from a contractor in exchange for awarding no-bid contracts for work performed at NYCHA developments, and extorted a contractor under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

6. Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

    a. NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

    b. NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD"). In each year from at least 2018 through 2022, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

    c. NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement transactions "in a manner providing full and open competition." As such, goods and services must

typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

d. When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services. This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed. As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

e. For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work. The contractor performs an initial site visit and then submits an itemized proposal to the designated staff. The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued. After the Procurement Department issues the purchase order, the contractor then performs the work. After the work is completed, a designated NYCHA development staff member performs a site visit. If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

f. NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions. Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may ***not***: . . .

- Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.

- Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .

- Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .

- Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as

---

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

3

employees or in connection with the actions or duties of any other employee of NYCHA.

• Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

• Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

## RIVERA'S EMPLOYMENT BY NYCHA

7. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of CARMEN RIVERA, the defendant:

a. From at least in or about August 2018 through at least in or about July 2021, RIVERA was employed as an assistant superintendent at Mitchel Houses, a NYCHA development located in the Bronx, New York.

b. From at least in or about July 2021 through the present, RIVERA was employed as a superintendent at La Guardia Houses, a NYCHA development located in New York, New York.

## RIVERA'S SOLICITATION AND RECEIPT OF PAYMENTS

8. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with two cooperating witnesses ("CW-5" and "CW-7")[2] who have performed work at NYCHA's Mitchel Houses and La Guardia Houses, among other developments,[3] I have learned the following, in substance and in part:

---

[2] The cooperating witnesses referenced in this Complaint are designated as "CW-5" and "CW-7" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[3] CW-5 and CW-7 have provided information to law enforcement pursuant to proffer agreements and have testified in the grand jury pursuant to immunity orders. As referenced below, CW-5 and CW-7 have both worked at the same company for multiple years and still communicate with each other socially. During this investigation, CW-5 and CW-7 were at all times interviewed separately from each other and neither was present when the other made the statements described herein, and they were instructed by law enforcement not to discuss with each other the contents of their interviews or their grand jury testimony in connection with this investigation.

        a.     Since at least in or about 2018, CW-5 and CW-7 have performed contracting work for NYCHA as partners with particular contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

        b.     Between August 2018 and June 2021, CW-5 and CW-7 were awarded multiple no-bid purchase order contracts at NYCHA's Mitchel Houses, during the time in which CARMEN RIVERA, the defendant, served as an assistant superintendent. CW-5 and CW-7 were referred to RIVERA by another NYCHA assistant superintendent at Mitchel Houses to whom CW-5 and CW-7 had made payments in exchange for no-bid contracts before RIVERA was assigned to Mitchel Houses.

        c.     On multiple occasions between in or about August 2018 and in or about June 2021, RIVERA called CW-5 to inform CW-5 of potential contracting work at Mitchel Houses. When CW-5 visited RIVERA to discuss the potential contract, RIVERA informed CW-5 that CW-5 would have to pay RIVERA in order to receive the contract. On multiple occasions, CW-5 and CW-7 drove to a bank branch location where CW-5 withdrew cash to pay to RIVERA. On each of those occasions, CW-5 and CW-7 then drove to Mitchel Houses, where CW-5 paid RIVERA between approximately $1,500 and $3,000 in cash, depending on the value of the no-bid contract. Based on my review of certain financial records for companies used by CW-5 and CW-7, I have learned that between at least in or about August 2018 and at least in or about March 2020, there are numerous cash withdrawals in amounts similar to or greater than the amounts CW-5 and CW-7 paid to NYCHA employees including RIVERA.

        d.     In or about July 2021, RIVERA was transferred to NYCHA's La Guardia Houses and promoted to superintendent. On multiple occasions between in or about August 2021 and in or about June 2022, CW-5 and CW-7 were awarded and completed no-bid contracts for work at La Guardia Houses, during the time in which RIVERA served as a superintendent at that NYCHA facility. Based on prior instances in which RIVERA required payments for no-bid contracts at Mitchel Houses, CW-5 and CW-7 understood that RIVERA continued to require payments for contracts at La Guardia Houses. On multiple occasions, CW-5 and CW-7 drove to a bank branch location for CW-5 to withdraw cash before driving to La Guardia Houses, where CW-5 paid RIVERA between approximately $1,500 and $3,000 in cash for each no-bid contract.

        e.     CW-5 has a contact saved in CW-5's cellphone with the name "Carmen Rivera" and a particular phone number ending in -0590 (the "RIVERA Number"). CW-5 used the RIVERA Number to communicate with the NYCHA employee that CW-5 paid at Mitchel Houses and La Guardia Houses, who was the same employee at Mitchel Houses and La Guardia Houses that CW-7 knew as "Carmen." Based on NYCHA Human Resources records that I have reviewed, I have confirmed that the RIVERA Number is listed as RIVERA's personal phone number.

        f.     On or about December 6, 2023, during a meeting with law enforcement on or about December 6, 2023, CW-5, without being prompted, pointed at a photograph of RIVERA that had been set to the side of the table where CW-5 and law enforcement were seated among

5

photographs of various other individuals, and correctly identified it as "Carmen Rivera," the person to whom CW-5 made payments at Mitchel Houses and La Guardia Houses.[4]

    g. CW-5 and CW-7 understood, based on their interactions with RIVERA and other NYCHA employees who similarly required payments for work, that if they did not make payments to RIVERA, they would not be awarded additional no-bid contracts for work at Mitchel Houses or La Guardia Houses.

  9. Based on my review of records provided by NYCHA and financial records for CARMEN RIVERA, the defendant, as well as a financial analysis of such records, I have learned the following:

    a. RIVERA's cash deposits into a particular bank account ("Account-1") include at least one cash deposit during the period in which CW-5 paid RIVERA approximately between $1,500 and $3,000 in cash per no-bid contract. Specifically, on or about June 30, 2022, a no-bid contract worth approximately $7,800 was awarded to CW-5's contracting company. On or about July 6, 2022, RIVERA deposited $1,500 in cash into Account-1, and on or about July 12, 2022, the no-bid contract was marked as "closed," which indicates that a NYCHA employee approved the completed work.

  WHEREFORE, I respectfully request that a warrant be issued for the arrest of CARMEN RIVERA, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

            /s/ Sean D. Hughes by SDA with permission
            _____
            SEAN D. HUGHES
            Special Agent
            U.S. Department of Homeland Security
            Homeland Security Investigations

Sworn to me through the transmission of
this Complaint by reliable electronic means,
this 31st day of January, 2024.

_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York

---

[4] On or about July 20, 2023, in earlier meetings with law enforcement that occurred at different times separately from each other, CW-5 and CW-7 each reviewed photobooks containing the same photograph of RIVERA among photographs of dozens of other individuals, but did not identify the photograph of RIVERA, nor did they identify any other photographs as appearing to be the individual at Mitchel Houses and La Guardia Houses saved as "Carmen Rivera" in CW-5's cellphone and whom CW-7 knew as "Carmen" at Mitchel Houses and La Guardia Houses.